IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL R. VAN DYKE,                                              Case No. 3:15-cv-00690-TC

        Plaintiff,

                                            FINDINGS & RECOMMENDATION

      v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

COFFIN, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance benefits and supplemental security income..

Plaintiff asserts disability beginning July 3, 2004, due to migraine headaches, central herniated lumbar discs with facet arthritis, osteoarthritis of the bilateral hips, knees, and cervical spine, medial meniscus tear of the left knee, bursitis of the left shoulder, right peroneal mononeuropathy, Borderline Personality Disorder, Post Traumatic Stress Disorder (PTSD), Dissociative Identity

Page 1 - FINDINGS & RECOMMENDATION

Disorder, anxiety, Panic Disorder with Agoraphobia, and depression.   After a hearing, an

administrative law judge (ALJ) determined that plaintiff was disabled as of July 1, 2012, but not

before.   Plaintiff contends the ALJ erred (1) in his determination that plaintiff was not fully

credible; (2) by failing to appropriately evaluate Plaintiff's severe Pain Disorder; (3) by failing to

consider whether Plaintiff's psychiatric conditions met or equaled a Listing; (4) by failing to call a

medical expert to establish a medically supportable onset date; (5) by failing to give appropriate

weight to lay witnesses; and (6) by failing to determine plaintiff's residual functional capacity.

The Commissioner contends this matter should be remanded to obtain medical expert

testimony to assist in establishing the onset date.  Because the ALJ's decision is not supported by

substantial evidence this matter should be remanded for the calculation and payment of benefits, and

Defendant's Motion (#25) for Remand should be denied.

Plaintiff filed applications for disability insurance benefits and supplemental security income

on September 6, 2006.  The applications were denied after a hearing before an ALJ in a decision

issued June 23, 2010.  A request for review was denied by the Appeals Council and Plaintiff

appealed to this court, which remanded the case for further administrative proceedings with

instructions to consider the opinions of the treating and examining doctors with regard to Plaintiff's

Pain Disorder as well as her severely impaired working memory. Tr. 1185-86.  On October 15,

2013, the ALJ issued a partially favorable decision finding Plaintiff disabled on July 1, 2012.

Plaintiff's amended alleged onset date is July 3, 2004.

A.  Plaintiff's Testimony

Page 2 - FINDINGS & RECOMMENDATION

September 30, 2004 Adult Function Report

Born in October 1974, Plaintiff was 29 years old when she completed this Adult Function Report. Plaintiff's daily activities include dressing, then resting before she goes upstairs. She rests halfway up the stairs and again when she reaches the top step. Tr. 155. She pours cereal into a bowl, and her mother pours milk on the cereal. After eating, Plaintiff lies down to rest for two hours to relieve her back pain. She showers before her mother drives her to appointments, or she knits, does paperwork, or makes phone calls. She does not sleep well, and must change position throughout the night. Tr. 156.

Plaintiff's personal care includes dressing herself slowly and resting after. She can bathe herself partially, washing her hair and shaving her legs is painful, her mother prepares her meals, and using the toilet is painful. She has been "unable to wear shoes for months now because the pain is too intense to put them on." Tr. 156. She does no household chores. She does not go out alone and does not drive because it hurts to use the clutch and push on the break. Tr. 158. She shops about twice a month for about an hour using an electric cart. Her mother puts the food in the cart.

Plaintiff knits blankets, watches television, and does crossword and jigsaw puzzles daily, with many breaks. Tr. 159. She has one friend with whom she talks on the telephone once a week. She can no longer walk her dog or go bowling. Tr. 160. Plaintiff can lift less than five pounds but "it throws me off balance." *Id.* Pain interferes with all physical activity and concentration and makes her sad, sensitive, and emotional. She can walk about ten steps before resting for ten to 60 seconds. She can pay attention for five to ten minutes.

Page 3 - FINDINGS & RECOMMENDATION

Plaintiff avoids authority figures, is paranoid, and "believe[s] thousands of demons are posing as people." Tr. 161. Stress causes panic attacks and self harm. She is claustrophobic, thinks people are poisoning her food, and has vocal and aural hallucinations. She uses unprescribed crutches or a wheelchair. Plaintiff's mother takes Plaintiff's daughter to after school activities. If Plaintiff is well enough to attend she brings a pillow to sit on. Plaintiff lies down for two hours before dinner, which her parents usually bring downstairs for her. She takes two Percocet every six to eight hours. Tr. 163.

April 30, 2010 Hearing Testimony

Plaintiff was 35 years old with a 13 year old daughter. Tr. 1095. She completed an Associate's degree in Criminal Justice and Certified Nurses Aide training. Plaintiff has not worked since her July 3, 2004 amended onset date. She is unable to work because of debilitating mental and physical problems. She is afraid to leave the house and "terrified of people." Tr. 1097. She fears imminent death or injury, and has panic attacks when she leaves the house. Stress causes seizures and she can black out for 30 minutes to three days with no recollection. Plaintiff has PTSD and anxiety attacks.

Plaintiff has a back injury with a herniation pushing on the sciatic nerve causing constant severe pain, peripheral artery disease (PAD) causing calf pain, and severe carpal tunnel syndrome in her dominant right hand. Stress causes her to self-mutilate. Tr. 1098.

She goes outside to walk her dog for about ten minutes daily at about 7:30 a.m., then goes back to bed every day from about 8:30 until about 2 or 3:00 p.m. Tr. 1099. Sometimes she sleeps, but most of the time she thinks about past trauma and suicide and cries. Plaintiff was beaten and raped in 1999. Tr. 1100. In July 2004 Plaintiff fell and injured her back. "With the sciatica, I

actually was so delusional from the pain, I thought that if I were able to separate the nerves, that the pain would go away, because they wouldn't be able to sensor through.  So, I actually took a knife and cut through, into the arm, into the muscle or whatever it was, to try and separate the nerves." Tr. 1102.  Plaintiff bathes and changes her clothes every couple of weeks, when her daughter reminds her.  Her daughter does the vacuuming.  Plaintiff cooks a simple meal about once a week. Tr. 1103.  Plaintiff's daughter does the dishes and the laundry.  Tr. 1104.  They grocery shop together twice a month, and Plaintiff's daughter pushes the car and takes items off the shelves. Plaintiff cannot grocery shop alone because she becomes "completely overwhelmed, claustrophobic, terrified of everyone that's in there."  Tr. 1105.  She becomes unable to concentrate and has a panic attack with heart palpitations, trouble breathing, and fear of imminent death.  The panic attacks occur two to three times a week, and last for 30 seconds to a minute.  Tr. 1106-07.  They occur both inside and outside of her home.  Panic attacks exhaust her, and she usually has to lie down afterward.

Plaintiff has seizures once to twice a week during which one of her extremities starts shaking and then she loses consciousness.  Tr. 1107-08.  Her treating physician prescribes methadone, Klonopin and Clonazepam.  She has episodes when she feels stress and will go to bed and wake three day later with no memory of what happened.

Plaintiff has constant daily back and leg pain, worse with toilet plunging, vacuuming, and grocery shopping.  Tr. 1111.  Pain is increased by walking, pushing a grocery cart, and reaching for items, so Plaintiff's daughter does that.   She can walk about 15 feet before she has to stop because of stabbing pain in her right calf.  She can sit about ten minutes before needing to change position

due to left hip pain.  Plaintiff has constant pain in both knees from torn ligaments.  She had the left

one repaired but still has constant pain, and she has no health insurance to repair the right knee.

Plaintiff has migraine headaches about twice a month that last from 24 to 72 hours.  Tr. 1114.

When she has a migraine she stays in bed, vomiting and writhing in pain.  Noises, odors, movement,

and light increase the pain.  She has no medication for migraines.

October 25. 2013 Hearing Testimony

Plaintiff testified she cannot work because she is "petrified to leave my apartment."  Tr.

1641.  She stated that "everything is overwhelming" she thinks people are following her and out to

get her.  *Id.*   She hears voices telling her to say things, and sees things that are not there.   She had

not done laundry in four months, and found showering overwhelming.  She had not wanted to leave

the apartment for about three years, although she took her dog out about three times a day and

walked down her street and back.  She attends a weekly abuse  recovery group and a weekly church

group, but goes only if her friend is going, and still has high anxiety.  Tr. 1642.   She postpones

grocery shopping as long as possible, goes with a friend, and only for a short period of time.

Plaintiff hears voices and has visual hallucinations in about equal measure.  Tr. 1643.  The

audio hallucinations occur three to four times a week and last less than a minute.  Tr. 1658.  The

voices are four men and one woman in her head.  One male is "really degrading," one tries to

convince her to kill herself.  Tr. 1643-44.   She hears and sees demons at an increasing rate, about

three or four times a week.  Tr. 1659.  None of her medications have alleviated these symptoms.

She sees a counselor once a month, although she would like to go once a week but the Oregon

treatment program is understaffed.  The counseling is not helpful because there is too much time

between appointments.  Plaintiff thinks  Lexapro stabilizes her mood "a little."  Tr. 1645.

Physical limitations include pain in her knees, back, left shoulder, hands, and fibromyalgia. Tr. 1646. "Every joint in my body from my jaw down to my toes hurts." *Id.* Her physicians took her off all pain medications several months ago because she is suicidal, and her pain increased. She tests her blood sugar level about three times a week, and her diabetes is not under control. Her memory and concentration have worsened over the past five years. She cannot remember whether she has taken her medications, and her parents reminded her of the hearing. Plaintiff's daughter lives with Plaintiff's parents. She does not see her parents or daughter on a regular basis.

Plaintiff drinks alcohol daily since the April 2013 death of her fiancé. She has used methamphetamine about four times. Plaintiff was hospitalized for attempted suicide in April, July, and September 2013. Tr. 1650. She continues to have suicidal ideation. Plaintiff believes her conditions have worsened over the past three or four years. She does not believe she could work full-time because "I wouldn't be able to make it out of the house." Tr. 1651. Plaintiff cannot be away from her apartment for more than two hours. Tr. 1652. She believes the number 111 is a bad number and it means something bad is going to happen. Tr. 1653. The number 1010 is a good number, but if 1010 and 1111 are together, 1111 cancels out 1010. This has been occurring for about 18 months.

Plaintiff's stress seizures occur four to five times a week, and are more frequent near the Halloween anniversary of her 1993 kidnapping and rape. Tr. 1654. She describes the seizures as like being electrocuted, she cannot move or breathe and her memory is erased. Plaintiff has anxiety attacks every time she leaves her apartment, with shaking and a fast heart rate, including when she takes her dog out or attends her meetings. Sometimes they become overwhelming and turn into a panic attack and she has to go home. Tr. 1655. During a panic attack she cannot move or talk and

Page 7 - FINDINGS & RECOMMENDATION

she feels like she is going to die.  Panic attacks happen three to four times a week, and afterwards she must lie down for at least three hours.  She has a panic attack most mornings, and goes back to bed for two to three hours. Tr. 1657.  She has been cutting herself since childhood to release emotional pain.  Tr. 1658.

B.  Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007).  When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,*  80 F.3d 1273, 1282 (9th Circ. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, "' the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281).  It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993).  Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the

claimant's testimony."  *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

Objective Medical Evidence

The ALJ found Plaintiff less than fully credible, citing a lack of objective evidence to support her physical complaints.  Tr. 1164.  The ALJ also found Plaintiff has a severe pain disorder, as diagnosed by Drs. Ugolini, Pluedeman, Richardson, Stone, Alvord, Hill and Chapin.  Tr. 1161, 620, 652, 779, 963, 1399, 1596.  By definition, a pain disorder causes the perception of pain in excess of what would be expected based on physical conditions alone.  Am. Psych. Ass'n., Diagnostic & Statistical Manual of Mental Disorder, pp. 485; 498-503 (4th ed., text revision 2000)(DSM-IV-TR).  The lack of objective medical evidence to support Plaintiff's physical complaints is therefore not a clear, convincing, specific or legitimate reason to find Plaintiff not credible.

Active Lifestyle

The ALJ found Plaintiff had an active lifestyle before July 2012 inconsistent with her testimony.  Tr. 1164.  The ALJ cited Plaintiff's reports of bowling on three occasions.  The ALJ cited Plaintiff's August 2005 report to her counselor that she provided adequate care for her daughter including a camping trip and going to the movies.  In that mental health assessment, however, Plaintiff was diagnosed with PTSD, severe, and Borderline Personality Disorder, with self mutilation and a GAF of 45.  Tr. 571.  She had recently attempted to sever the nerves to her legs.

The ALJ cites evidence of vacations as inconsistent with disabling symptoms.  Tr. 1164. Plaintiff was seen in the emergency room on October 19, 2005 for headache and double vision which began after a family vacation at Disneyland.  Tr. 756.  In the summer of 2005 Plaintiff and

Page 9 - FINDINGS & RECOMMENDATION

her parents took a trip to Tennessee to see family during which Plaintiff appeared to have lost consciousness for about 18 hours.  Tr. 266.

The ALJ cites Plaintiff's attendance at an abuse recovery group at church as inconsistent with disability.   Tr. 1164. Plaintiff testified, however, that she attends this meeting only when her friend can go with her and with great anxiety.  On this record, the ALJ has not identified specific, legitimate, clear or convincing reasons to find Plaintiff less than fully credible.

<u>Minimal Mental Health Treatment between January 2007 and July 2012</u>

The ALJ found Plaintiff less than fully credible because she did not seek mental health treatment for an extended period of time.  Tr. 1167.  This is factually incorrect.  In January 2007 Plaintiff reported to her counselor her boyfriend had left her and she had blacked out from stress.  Tr. 892.  In February 2007 Plaintiff blacked out in the bathroom resulting in hospitalization for muscle fiber death.  Tr. 693.  Later that month Plaintiff was seen in the emergency room for heart palpitations, shortness of breath, and fatigue.  Tr. 688.  On March 5, 2007 Plaintiff was seen in the emergency room with a possible seizure.  Tr. 684.  She continued in counseling and was angry, sullen, and argumentative.  Tr. 887-90.  In May and June 2007 Max Duncan, D.O. determined Plaintiff's shaking spells were related to depression and anxiety and prescribed BuSpar.  Tr. 1030. Plaintiff reported seizures occurring two to three times a month in July 2008.  Tr. 1008.  In September 2008 she was on a waiting list for a psychiatrist.  Tr. 1003.  In December 2008 Lincoln County Mental Health personnel noted impaired judgment and insight, self-mutilation, hypervigilance, exaggerated startle response, difficulty with concentration and memory issues.  Tr. 845.  She was diagnosed with PTSD, severe, chronic and traits of schizoid, paranoid, avoidant, and borderline personality disorders, with a GAF of 45.   By February 2009 Plaintiff's PTSD symptoms

Page 10 - FINDINGS & RECOMMENDATION

were increasing and her doctor increased citalopram. Tr. 993. Plaintiff returned to Lincoln County

Mental Health in December 2009 and was assessed with PTSD, Major Depressive Disorder, and

rule-out personality disorders. Tr. 842. She was noted to be distressed. Plaintiff reported to her

physician later that month that her anxiety increased outdoors. Tr. 942. In April 2011 Plaintiff was

seen at Lincoln County and diagnosed with PTSD, chronic, severe, Major Depressive Disorder,

Anxiety Disorder, and schizoid, avoidant, and paranoid borderline personalty traits, with a GAF of

45. Tr. 1579.

The ALJ failed to identify specific, legitimate, clear or convincing reasons to find Plaintiff

less than fully credible and therefore that finding is not supported by substantial evidence and should

be reversed.

C. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1);

416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord

greater weight to the opinion of a treating physician than that of an examining physician. *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating

physician because the person has a greater opportunity to know and observe the patient as an

individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should

also give greater weight to the opinion of an examining physician over that of a reviewing physician.

*Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ

may only reject it for clear and convincing reasons. *Id.* (Treating physician); *Widmark v. Barnhart,*

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted

by another physician, the ALJ may not reject the opinion without providing specific and legitimate

reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff was seen in the emergency room in September 2002 for increasing agitation. PTSD, anxiety, and borderline personality disorder were diagnosed. Tr. 837. She was referred to the hospital's Mental Health Crisis Program where she was examined by Joylynn Penaloza, Psy. D., and diagnosed with Panic Disorder without agoraphobia, PTSD, rule-out alcohol abuse, and rule-out Borderline Personality Disorder and assessed a GAF of 51. Tr. 831-33. Plaintiff was harming herself with sharp objects. Hannes J. S. Sigurdsson, M.D. examined Plaintiff and diagnosed Panic Disorder with Agoraphobia, PTSD, assessed a GAF of 51, and prescribed Risperal and Celexa. Tr. 829-30.

In November 2002 Plaintiff was hospitalized after intentionally overdosing on Trazodone. Tr. 820-21. Bowen S. Parsons, M.D., noted Plaintiff was a "difficult historian," illogical, histrionic, contradictory, and impulsive." Tr. 820. Dr. Parsons diagnosed Major Depression, recurrent; Dysthymia; Chronic PTSD; and Borderline Personality Disorder with a GAF of 45.

Plaintiff began counseling with Homestreet, Inc. in October 2003. Tr. 875-900. Lori Danker, P.M.H.N.P., conducted a Psychiatric Evaluation in which Plaintiff described panic attacks, seeing ghosts, and a fear of her food being poisoned. Tr. 876. She had daily nightmares and thought a coworker was a demon, and sought treatment to diminish her delusions. Nurse Danker diagnosed

PTSD, and Borderline Personality Disorder, and assessed a GAF of 55.  She prescribed Seroquel, Klonopin, and Zoloft.  Tr. 877.

In December 2004 Charles H. Kuttner, M.D., a supervising psychiatrist at Homestreet, noted Plaintiff's history was consistent with Dissociative Identity Disorder and that mood lability and continuing suicidal ideation were of particular concern.  Tr. 576.  Her symptoms were not adequately controlled by medications, and Dr. Kuttner noted that finding an ideal medication regimen was proving challenging.  He stated "I do consider her unable to maintain employment due to her thought disorder and other psychiatric symptoms alone.  I will be happy to review and co-sign disability form."  *Id.*   Dr. Kutter and Sheri Dinguss, N.P., completed a Mental Status Report in which they noted they had been treating Plaintiff for 14 months, and she continued to have chronic self-harm  ideation.  They described her as "overwhelmingly absorbed in her own issues," and "it is highly likely this issue would create major difficulties in a work setting."  Tr. 579.

The ALJ gave these opinions "limited" weight, stating that the evidence did not establish a diagnosed thought disorder and that the opinions provide no specific work restrictions and addressed issues reserved to the Commissioner.  Tr. 1166-67.  The ALJ's reasons fail as Dr. Kuttner himself said Plaintiff had a "thought disorder."  Tr. 576.

Kathleen Ugolini, Ph.D., conducted a Psychodiagnostic Evaluation of Plaintiff in November 2006.  She diagnosed PTSD, chronic; Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, chronic (provisional); and Borderline Personality Disorder (provisional). Tr. 652.  Dr. Ugolini found Plaintiff would have "moderate to severe difficulty in social interactions and during conflicts, and would have significant difficulty understanding and

remembering simple instructions and maintaining focused attention and persistence throughout the workday." *Id.*

The ALJ gave Dr. Ugolini's opinion "partial weight," stating that the medical evidence did not indicate Plaintiff would have difficulty maintaining focus and persistence through an eight hour day if limited to simple, routine tasks. Tr. 1167. The ALJ further noted Dr. Ugolini's opinion was based in part on Plaintiff's incredible self-reports. Dr. Ugolini's opinion , however, that Plaintiff would have "difficulty maintaining focused attention and persistence" through an eight hour day is medical evidence. In addition, the inability to maintain focus and persistence is entirely consistent with Dr. Kutter's opinion that Plaintiff was "entirely absorbed in her own issues." Tr. 579.

Rory F. Richardson, Ph.D., conducted a Neuropsychological Evaluation in November 2007. Dr. Richardson administered the Rietan Indiana Aphasia Screen, the Wechsler Adult Intelligence Scale, the Wechsler Memory Scale, Trail Making A and B, the Million Clinical Multiaxial Inventory -III, the Irlen Perceptual Screen, and the Yale-Brown Obsessive Compulsive Scale. Tr. 1078-88. Dr. Richardson found Plaintiff had a "severely impaired" working memory, and diagnosed Obsessive Compulsive Disorder, Major Depressive Disorder, Panic Disorder with Agoraphobia, PTSD, chronic, and Somatoform issues. Tr. 1088.

Plaintiff's treating providers at Lincoln County Behavioral Heath opined in December 2008 that Plaintiff's prognosis was guarded due to the pervasiveness of her behavior patterns and symptoms. Tr. 845-47.

Scott T. Alvord, Psy.D., examined Plaintiff on three occasions concluding in October 2013. Tr. 1587-96. He administered the Wechsler Adult Intelligence Scale-IV, the Wechsler Memory Scale-IV, the Trail Making Test, and the Beck Depression Inventory. Dr. Alvord found Plaintiff's

ability to manage a household and care for herself "severely impaired." Tr. 1590. He found her ability to concentrate, persist, and maintain pace "severely impaired secondary to anxiety, depression and cognitive deficits." *Id.* He recommended she be appointed a protective payee. Dr. Alvord diagnosed PTSD, chronic, severe; Major Depressive Disorder (recurrent, severe with psychosis); Cognitive Disorder NOS; Pain Disorder; and Borderline Personality Disorder with a GAF of 30. Tr. 1596. Dr. Alvord opined that Plaintiff would not succeed in an occupational setting, and any work attempt would likely cause decompensation.

The ALJ gave Dr. Alvord's opinion great weight, and found Plaintiff's allegations regarding her symptoms and allegations generally credible as of July 1, 2012. Tr. 1170. For the period prior to July 1, 2012, the ALJ gave great weight to the opinions of reviewing consultants. Bill Hennings, Ph.D., found Plaintiff capable of work without regular contact with the general public in January 2005. Tr. 421-24. Paul Rethinger, Ph.D. opined in September 2005 that Plaintiff would have difficulty interacting with the public and complex tasks. Tr. 456-59.. In December 2006 Dr. Hennings found Plaintiff capable of simple, routine tasks. Tr. 672-75.

The reviewing consultants, however based their opinions on the same clinical findings as the treating and examining physicians and therefore do not constitute substantial evidence to reject the treating and examining physicians. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989), *Andrews v. Shalala,* 53 F.3d 1035,1041 (9th Cir. 1995). The ALJ's rejection of the examining and treating physicians is not supported by specific, legitimate, clear or convincing reasons and not supported by substantial evidence.

### REMAND

Page 15 - FINDINGS & RECOMMENDATION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's rejection of plaintiff's testimony regarding her limitations prior to July 1, 2012, as well as the opinions of the treating and examining physicians, should be found erroneous for the reasons set out above.

Page 16 - FINDINGS & RECOMMENDATION

Accordingly, this matter should  remanded for the calculation and award of benefits effective Plaintiff's alleged onset date of July 3, 2004.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

Dated this 12th day of August 2016.


　s/Thomas M. Coffin
Thomas M. Coffin
United States Magistrate Judge